IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FAIK MEHMETI, | ) CASE NO. 4:14-cv-547 |
|  | ) |
| Petitioner, | ) JUDGE JEFFREY J. HELMICK |
|  | ) |
| v. | ) |
|  | ) MAGISTRATE JUDGE |
| WARDEN, FCI ELKTON, | ) THOMAS M. PARKER |
|  | ) |
| Respondent. | ) |
|  | ) **REPORT & RECOMMENDATION** |

**I.     Introduction**

Petitioner Faik Mehmeti filed a *pro se* petition for writ of habeas corpus (Doc. No. 1[1]) pursuant to 28 U.S.C. § 2241 on March 12, 2014 in order the challenge the forfeiture of good time credit arising out of the application of prison disciplinary procedures while he was housed at the Federal Correctional Institution in Elkton, Ohio.[2]  Mehmeti asserts that he was not afforded due process of law when he was sanctioned for violating prison rules.  He also contends he was treated disparately, in violation of his equal protection rights because only he, and not another party he claims could have been responsible for the violation was subjected to the disciplinary procedure.

The matter was referred pursuant to Local Rule 72.2 for a report and recommendation to former Magistrate Judge Greg White on April 2, 2015.  Respondent filed a Return of Writ, styled as a "Motion in Opposition to Petition for Writ of Habeas Corpus" on August 19, 2015.  Subsequently, the matter was referred to the undersigned on March 29, 2016 after Magistrate

---

[1] All document references are to docket entries of records filed on the CM/ECF System.
[2] According the BOP website, Mehmeti was released from federal custody on April 15, 2016. https://www.bop.gov/inmateloc/

Judge White retired.

For the reasons set forth below, it is recommended that the petition for writ of habeas corpus be DENIED.

### A. Preliminary Matters

At the time Mehmeti filed his petition, he was in custody, thereby meeting the statutory requirement of 28 U.S.C. § 2241(c)(2). He brought this action in this court while incarcerated at the Federal Correctional Institution at Elkton, Ohio; therefore, this court is the proper jurisdiction in which to commence the action. Claims asserted by federal prisoners seeking to challenge the execution or manner in which a sentence is served must be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. *Capaldi v. Pontesso,* 135 F.3d 1122, 1123 (6th Cir. 1998) (citing *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991)); *Wright v. United States Bd. of Parole*, 557 F.2d 74, 77 (6th Cir.1977). Here, Mehmeti has properly filed his request for habeas relief in this court, as it has personal jurisdiction over his custodian.

Further, the court has subject matter jurisdiction to consider Mehmeti's petition under 28 U.S.C. § 2241 because "[a] federal constitutional violation in a prison misconduct proceeding that results in the loss of good time credit can only be remedied through a writ of habeas corpus." *Hughes v. Birkett*, 173 Fed. Appx. 448, 449 (6th Cir. 2006), citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

Mehmeti has made no request for the appointment of counsel, and he has not requested an evidentiary hearing.

### II. Background

As of March 13, 2012, Mehmeti was incarcerated at the Metropolitan Detention Center in

Brooklyn, New York.[3] An incident report created by S/O F. Lopez states:

> On the above time and date while conducting a shakedown of K-B, I noticed a small handle protruding from the bottom of the left side locker. After further inspection, I pulled out a sharpened tooth brush with a handle made from shredded bedsheets approximately 7 inches in length. In the locker were [*sic*] the weapon was found was the id card of inmate Mehmetti #79374 – 053.[4]

Mehmeti describes the incident differently:

> An officer found a sharpened tooth brush handle by prying open, with a pry-bar, the bottom of my locker, which was bolted to the floor, but semi-accessible by holes in the side. There is no way a human could lift that bottom without a tool. I had no access to tools. I know this because he told me; however, when I asked for that officer as a witness at my hearing with the DHO, they said that he couldn't be there. I was denied the witness.[5]

The BOP Incident report was delivered to Mehmeti on March 14, 2012. Mehmeti was charged with possession of a weapon, a Code 104 violation.[6] Mehmeti was advised of his right to a hearing before a Discipline Hearing Officer ("DHO") on March 16, 2012.[7] Mehmeti waived his right to have a staff representative at the hearing.[8] According to the DHO report, Section III(C)(1), "Yes" was checked on the line stating "The inmate requested witnesses."[9] However, the DHO report indicates no witnesses testified.

The hearing was conducted on April 4, 2012 at 11:00 a.m. Section V. of the DHO report, "SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (physical evidence, observations, written documents, etc.) states:

> Your due process rights were read and reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present and requested no witnesses. In addition, you did not request

---

[3] ECF Doc. No 1-2, Page ID# 11.
[4] Id.
[5] ECF Doc. No. 1, Page ID# 7.
[6] ECF Doc. No 1-2, Page ID# 11.
[7] ECF Doc. No. 13-1, Page ID# 71.
[8] Id.
[9] Id.

3

the services of a staff representative. You then indicated that you were ready to proceed with your DHO hearing.

It was noted that you originally requested a staff representative, but waived that right at the hearing.

The DHO finds you committed a prohibited act of Code 104 Possession, manufacture of a weapon. The finding is based on the written statement of the reporting officer that on 3/13/12, at approximately 2:15 PM, the officer was conducting a shakedown of KB cell K03-8201. He noticed a small handle protruding from the bottom of the left side of the locker. After further inspection, the officer pulled out a 7" sharpened tooth brush with a handle. In the locker where the weapon was found was your ID. A photo of the 7" sharpened tooth brush with handle was also relied upon.

During the hearing, you stated, I could not have access to that area. They found it under the locker. This is not true.

Based upon the officer written statement that the officer was conducting a shakedown of KB cell K03-8201 [*sic*]. He noticed a small handle protruding from the bottom of the left side of the locker. After further inspection, the officer pulled out a 7" sharpened tooth brush with handle. In the locker where the weapon was found was your ID. A photo of the 7" sharpened tooth brush with a handle was also relied upon. Although you deny this charge the DHO considered the greater weight of the evidence, and finds you committed the prohibited act of code 104.[10]

Mehmeti was sanctioned by the DHO following his finding that a Code 104 violation had occurred. He was sanctioned 40 days loss of good time credit, 120 days Disciplinary Segregation, 250 days loss of phone and commissary privileges and a $75 fine.[11]

Mehmeti appealed the disciplinary ruling on April 18, 2012. His appeal stated:

A weapon was found under my locker in a space not accessable [*sic*] to me. The officer conducting the search used a crow bar to extract the weapon. I had no knowledge the weapon was there. The only way I could have found it was to damage federal property. I was placed in segregation and my cellmate was not. My cellmate was not even questioned. The space under the locker is not my personal space.[12]

---

[10] Id. at Page ID# 72.
[11] Id. at Page ID# 73.
[12] Id. at Page ID# 81.

4

The appeal made no mention of any deprivation of due process rights resulting from the Mehmeti's inability to call the guard who had found the weapon as a witness. The appeal was denied by the regional director on May 23, 2012 in a decision that stated in part: "The DHO found you committed the prohibited acts based on the following. On March 13, 2012, the reporting officer found a six inch sharpened weapon on the floor of your cell between a desk and the wall. . . . There is no evidence in the record supporting your contention that a crow bar was used to find the weapon."[13]

Mehmeti pursued a Central Office Administrative Remedy Appeal on June 17, 2102. His second appeal stated:

> A weapon was found in a small space underneath the lockers in my cell. I had a Bunkie, Bajram Lajqi. The weapon was not found in my locker but yet I was the only person taken to the S.H.U. My bunkie was not even questioned. We both had equal access to the space. Responsibility to maintain the space free of contraband should have fallen on both of us. I believe policy was not followed by detaining only me.[14]

The appeal was denied in a decision issued by the administrator of National Inmate Appeals on April 4, 2013. That decision stated, in part:

> "You were provided due process . . . You were given advanced written notice of the charge against you more than 24 hours prior to your appearance before the DHO. In addition, you were afforded the opportunity to request a staff representative and witnesses. You were afforded the right to present a statement and submit documentary evidence. . . . The DHO considered all relevant evidence and relied upon the greater weight of the evidence. We determined the finding and decision were reasonable and the elements of the infraction codes adequately satisfied."[15]

---

[13] Id. at Page ID# 80.
[14] Id. at Page ID# 79.
[15] Id. at Page ID# 78.

5

**III.     Positions of the Parties**

   **A.  Petitioner's Grounds for Relief**

   Mehmeti's petition asserts four grounds for relief:

   **GROUND ONE**: I did not have Constitutional Due Process at my prison discipline hearing. (Fifth Amendment).

   **Supporting Facts Regarding Ground One**: An officer found a sharpened tooth brush handle by prying open, with a pry-bar, the bottom of my locker, which was bolted to the floor, but semi-accessible by holes in the side.  There is no way a human could lift that bottom without a tool.  I had no access to tools.  I know this because he told me; however, when I asked for that officer as a witness at my hearing with the DHO, they said that he couldn't be there.  I was denied the witness.

   **GROUND TWO**: I did not have Due Process on my DHO hearing APPEAL; I was still denied access to the officer, and so was an attorney that I hired to get a statement.

   **Supporting Facts Regarding Ground Two**:  I'm not afraid of the truth.  The truth will exhonerate [*sic*] me.  I hired an attorney to get a statement from the officer, who I never saw again.  That attorney was stonewalled by the MDC and BOP; I was denied a proper and full appeal because of that.

   **GROUND THREE**: The area under the lockers was inaccessible without a tool, and the degree that it WAS accessible, it was accessible to all; this is not an application (a proper application) of the doctrine of constructive possession.

   **Supporting Facts Regarding Ground Three**:  The item was allegedly found in a common area.  Only I was concerned for guilt; only I was charged.  Even my roommate was not.  It is legal error to apply the doctrine of constructive possession to me in those circumstances.

   **GROUND FOUR**: I was denied the equal protection of the law (Fifth and Fourteenth Amendments, when I was the only person charged.

   **Supporting Facts Regarding Ground Four**:  Prison discipline was selectively applied when only I was charge, and found guilty, applying constructive possession when I had at LEAST a roommate, and many people had occupied the room before me; and constructive possession was applied to an area where I had no access whatsoever, without a 4' pry-bar.[16]

---

[16] ECF Doc. No. 1, Page ID# 6-7.

6

Mehmeti's petition asserts that each of the four grounds for relief was presented in all appeals that were available to him.[17]

Mehmeti's brief in support of his petition contends that he asked to have three witnesses testify on his behalf: his cell-mate, his counselor as a staff representative, and the officer who searched his cell.[18] Mehmeti contends that the officer would have testified that the sharpened toothbrush found in Mehmeti's cell had been discovered when his locker was pried up using a large pry-bar.[19]

Mehmeti contends he was told that none of his requested witnesses was available to testify at his hearing before the DHO. He alleges that the DHO told him he could indefinitely postpone his hearing until the witnesses could appear – but he would have to remain in the Special Housing Unit (SHU or "the hole") until then – or he could proceed to have his hearing without the witnesses being available. Mehmeti claims he inferred that the disciplinary hearing would not be held "any time soon." By the time he was forced to make this choice, he had already been in the SHU for 22 days.[20]

Mehmeti also contends that he asked his defense attorney[21] to obtain an affidavit from the guard who conducted the search. He claims no affidavit was able to be obtained because his attorney was "stone-walled," just as he was.[22]

Mehmeti asserts that it was improper to find him guilty on a theory of constructive possession because it would have been impossible for him to possess an item that was located

---

[17] Id.
[18] ECF Doc. No. 3, Page ID# 35.
[19] Id.
[20] Id. at Page ID# 36.
[21] He was being detained at MDC pending trial on an underlying charge; the attorney he referred to was the individual who was defending that case. (ECF Doc. No. 3, Page ID# 40-41)
[22] Id.

under a locker that was bolted to the floor and which could only be accessed by means of a crow bar. He contends that a key element of constructive possession is the ability to gain access to or control the thing. He contends he could do neither, and his missing witnesses would have enabled him to refute the constructive possession charge.[23]

Mehmeti's final contention is that if the contraband had been accessible to him, then it was also accessible to his cell-mate. He asserts that he was improperly subjected to selective prosecution given that he was charged and his cell-mate was not.[24]

### B. Government's Points in Opposition to Requested Relief

The government's opposition brief concedes that Mehmeti filed his petition was filed after he "fully exhausted his administrative remedies;" he filed it in the correct jurisdiction, and he filed it naming the proper party as a defendant. The government also concedes that 28 U.S.C. § 2241 is the proper statute under which to seek federal habeas relief for inmates who contend their good-time credits were forfeited in violation of their constitutional rights.[25]

The government argues that Mehmeti "stated he understood his rights, had no documentary evidence to present and requested no witnesses."[26] The government concedes that if "Mr. Mehmeti had requested a witness for the hearing, the DHO would have been required to at least consider the witness' statement. However the record demonstrates that Mr. Mehmeti chose to proceed without a witness and/or a staff representative."[27] The government also asserts that "the allegation that an attorney attempted to contact Mr. Mehmeti's witness is also offered

---

[23] Id. at Page ID# 42-43.
[24] Id. at Page ID# 43-44.
[25] EFC Doc. No. 13, Page ID# 63-64.
[26] Id. at Page ID# 65.
[27] Id.

8

without any support or evidence."[28] The government did not address Mehmeti's argument that he requested witnesses, as reflected in Section III(C)(1) of the DHO report.

The government also did not address Mehmeti's contention that he was effectively forced to proceed without witnesses by the implicit requirement that he remain in the SHU pending a rescheduled hearing date at which the requested witnesses could have been available.

In regard to Mehmeti's contention that his equal protection rights were denied when only he – and not his cell-mate – was charged with constructive possession of the weapon, the government simply states, without citation of authority: "There is, however, no mandate for that accommodation under the law or Constitution."[29]

The government argues that the finding that Mehmeti was guilty of a Code 104 weapons violation was supported by some evidence in the record. Based on that, it urges the court to deny the requested petition for writ of habeas corpus.

**IV.  Analysis**

    **A.  Ground One**

Ground One of the petition asserts two due process issues, one factual and one procedural. First, Mehmeti contends he should not have been found guilty because he could not have accessed the sharpened toothbrush that was found when his locker was pried from the floor with a crow bar. This is a contention that insufficient evidence supported his having been found guilty of the infraction. Second, he contends he asked to have the officer who conducted the search of the cell be a witness at his hearing, but he was denied the witness due to unavailability.

When a prisoner faces the loss of good time credits, due process requires that he has the

---

[28] Id.
[29] Id.

following rights: 1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied upon and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). In addition, "some evidence" must exist to support the disciplinary conviction. *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455-56 (1985).

Federal courts do not assess credibility or weigh evidence when reviewing a disciplinary conviction. " [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent,* 472 U.S. at 455. Further,

> [a]scertaining whether this ["some evidence"] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56.

This court cannot review a disciplinary committee's resolution of factual disputes. *Id.* at 455. A district court merely ensures that a disciplinary decision is not arbitrary and that it has evidentiary support. *Id.* at 457. Thus, the only question is whether the DHO had "some evidence" to ensure fairness and justify the findings made.

In a situation such as the one here presented in which the petitioner asserts that alternative conclusions could have been reached concerning the factual issues resolved at the disciplinary hearing, the Supreme Court has stated the governing standard regarding the amount of proof required and the manner in which it may be reviewed:

> The Federal Constitution does not require evidence that logically precludes any

10

> conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence [implicating the petitioner], the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Id.* at 457. The finding against Mehmeti was supported by the prison officer's report, which stated:

> On the above date and time while conducting a shakedown of K-B I noticed a small handle protruding from the bottom of the left side locker. After further inspection I pulled out a sharpened toothbrush with a handle made from shredded bed sheets approximately 7 inches in length. In the locker were [*sic*] the weapon was found was the id card of inmate Mehmetti [*sic*] # 79373-053.[30]

These facts alone, though meager, constitute some evidence supporting the finding by the DHO. On that basis, the first portion of Mehmeti's Ground One prayer for relief should be denied.

The second portion of Mehmeti's Ground One prayer presents a procedural due process issue. He prominently argues that he was effectively forced to proceed with his hearing despite his requested witnesses not being available. The report of the DHO is ambiguous on this issue. On the one hand, Section III(C)(1) of the report indicates that Mehmeti requested witnesses. Section V, on the other hand stated: "Your due process rights were read and reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present and requested no witnesses. . . . You then stated you were ready to proceed with your DHO hearing."[31]

It is certainly possible that Mehmeti's characterization of the situation involving the witnesses is consistent with the description of the DHO. He *could* have requested

---

[30] ECF Doc. No. 1-2, Page ID# 11.
[31] Id. at Page ID# 13.

11

witnesses. He *could* have been informed the witnesses were unavailable. He *could* have been told he could choose to postpone the hearing and return to the SHU indefinitely until the hearing could be rescheduled. And he *could* have resolved that Hobson's choice by informing the DHO that he was "ready to proceed" with his DHO hearing. Alternatively, it is also possible that the DHO's characterization could be accepted at face value. Mehmeti, when informed that his witnesses were not available could have decided to waive his right to call them and advised the DHO that he was ready to proceed. The court cannot resolve this factual dispute based on any evidence in the record. Normally, this might suggest the need to remand the matter to the defendant for further amplification of the record.

In this circumstance, however, remand is not warranted. Although Mehmeti's petition asserts that Ground One was presented in all appeals that were available to him,[32] a review of both of his appeal notices reveals that the issue of his inability to call his requested witnesses was not presented at either his first or his second level appeal.[33] Thus, contrary to the government's concession, Mehmeti did not exhaust his administrative appeal remedies in regard to the discrete issue of whether he as wrongly deprived of his due process right to call witnesses, even though he unquestionably completed two levels of administrative review addressing his other topics.

Mehmeti is foreclosed from obtaining habeas relief based on a claim that was not exhausted. "It is well established that federal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted." *Little v. Hopkins*, 638 Fed.2d 953, 954 (6th Cir. 1981). This requirement

---

[32] ECF Doc. No. 1, Page ID# 7.
[33] ECF Doc. No. 1-3, Page ID# 15; and ECF Doc. No. 13-1, Page ID# 81.

applies to habeas petitions sought under 28 USC § 2241. *Engle v. United States*, 26 Fed. Appx. 394, 396 (6th Cir. 2001).

28 C.F.R. § 542.15 requires appeals of adverse prison discipline decisions to be filed within twenty days. Because that deadline passed long ago (and because he is no longer incarcerated) Mehmeti may not now file an administrative appeal to raise the due process issue of whether he was wrongly prevented from calling his desired witnesses. As a result, he has procedurally defaulted the right to raise the issue of his alleged denial of witness in this action. If a prisoner has failed to exhaust his administrative remedies due to a procedural default, and the default renders unavailable the administrative process, review of his habeas claim on that ground is barred unless he can demonstrate cause and prejudice. *Sanchez v. Miller,* 792 F.2d 694, 699 (7th Cir. 1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996). Here, Mehmeti has not attempted to address the issue of what, if anything, caused him not to present the issue concerning his witnesses on his administrative appeals. Even if the court presumes his characterization of how his proposed witnesses would have testified is accurate, and further presumes for the sake of analysis that he suffered prejudice as a result of his inability to call them, it is evident that nothing in the record suggests any reason why the issue was not raised.

For the foregoing reasons, the court should deny the request for habeas relief on Ground One. There is some evidence in the record supporting the disciplinary finding, and petitioner failed to exhaust his administrative remedies and, thereby, procedurally defaulted the issue of his alleged inability to call witnesses.

13

**B. Ground Two**

Mehmeti's second ground for relief asserts that his due process rights were compromised in connection with his administrative appeals because he was "denied access to the officer" – his missing witness – as was the defense attorney working on his underlying case. Initially, it must be noted that nothing in the record of the disciplinary proceedings or appeals makes any reference to the alleged activities of Mehmeti's defense attorney. Thus, there is no evidence to support ground to; petitioner relies only upon his own statements found in his petition and his accompanying brief.

The court should deny the request for habeas relief on Ground Two. Because Ground Two is entirely premised on Mehmeti's claimed inability to call his requested witnesses, and because that issue was not addressed in Mehmeti's administrative appeals, Mehmeti failed to exhaust his administrative remedies in respect to that ground for relief, and the claim has been procedurally defaulted, for the same reasons set forth in the analysis of Ground One above.

**C. Ground Three**

In his third ground for relief, Mehmeti returns to the factual issue raised in Ground One. He contends: "The area under the lockers was inaccessible without a tool, and to the degree it WAS accessible, it was accessible to all; this is not an application (a proper application) of the doctrine of constructive possession." This ground for relief actually raises two issues: first, that Mehmeti could not have possessed the prohibited weapon; and, second, even if the weapon could have been possessed he was not the only one who could have possessed it.

In support of his position on Ground Three, Mehmeti relies upon, *inter alia*, *McClung v. Hollingsworth*, No. 06-6699, 2007 WL 1225946 (4th Cir. April 26, 2007). The *McClung* case is

14

nearly identical on its facts to the situation presented in this case. The Fourth Circuit affirmed the district court's rejection of McClung's habeas petition only after remanding the case to the district court to analyze the number of inmates who may have had access to the area in McClung's cell where a homemade weapon was found. Ultimately, the Fourth Circuit approved a test that limited the application of the constructive possession rule in situations in which many inmates would have had access to the place where the contraband was located.

*McClung* is not authority that binds this court. A district court is only bound by decisions of the court of appeals of the district in which it sits. *See*, *Kelley v. Warden, FCI Elkton*, No. 4:13 cv 0662 at *4, (N.D. Ohio Aug. 26, 2013). In contrast, a district court is not bound by courts of appeals for other circuits. *Id.* Judge Polster noted in *Kelley*, "[N]either the Sixth Circuit nor any District Court within its boundaries has held that the constructive possession rule will only provide "some evidence" of guilt when relatively few inmates have access to the area." "Revocation of good time credits is not comparable to a criminal conviction, [*Wolff v. McDonnell*, 418 U.S. at 556] and neither the amount of evidence necessary to support such a conviction, see *Jackson v. Virginia, 443 U.S. 307 (1979)*, nor any other standard greater than some evidence applies in this context." *Superintendent,* 472 U.S. at 456.

This court notes that the evidence relied upon by the DHO appears to have been limited to the "Description of Incident" statement in the Incident Report.[34] That statement indicates that the weapon was found "protruding from the bottom of the left side locker." And the statement indicates that Mehmeti's ID was "in the locker where the weapon was found."[35] While this is not direct evidence identifying Mehmeti as the owner of the weapon, "the record was no so devoid

---

[34] ECF Doc. No. 12- Page ID# 11.
[35] Id.

15

of evidence that revocation of good time credits was without support or otherwise arbitrary." *Superintendent*, 472 U.S. at 457. Mehmeti argues strongly that he could not have accessed the weapon without a crow bar, and, as a result, he could not be concluded to have possessed the contraband. But the DHO heard that argument and, drawing reasonable inferences from what was presented and weighing the credibility of the evidence submitted by the prison personnel and by the inmate, rejected Mehmeti's conclusion. This court is not empowered to second guess such a conclusion or re-weigh the evidence. Because "some evidence" supports the revocation of Mehmeti's good time credits, his claim for relief in Ground Three should be denied.

### D. Ground Four

Ground Four of Mehmeti's petition asserts an Equal Protection Clause violation based on a selective prosecution argument. Mehmeti complains that only he was charged with a Code 104 violation, despite the fact that he had a cell-mate and that "many people had occupied the room before me." He also restates his contention that he could not access the weapon without a crow bar. As noted above, the government gives short shrift to the equal protection claim, indicating there is no support for it in the law.

To the extent Ground Four is a restatement of the factual and legal issues addressed in Ground One and Ground Three, this court should deny the claim for relief based upon an application of the analyses set forth with respect to those grounds above. There was some evidence to support the conclusion of the DHO that Mehmeti was guilty of a code 104 infraction; that being so, the court cannot undo that conclusion.

The central argument of Ground Four is that Mehmeti's equal protection rights were violated when he was selectively prosecuted. In *United States v. Armstrong*, 517 U.S. 456, 463(1996), the Supreme Court observed, in a different context, that "[a] selective-prosecution

16

claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." The Court further elaborated upon what is required to demonstrate a valid equal protection claim arising from a selective prosecution argument:

> In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978).
>
> Of course, a prosecutor's discretion is "subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979). One of these constraints, imposed by the equal protection component of the *Due Process Clause of the Fifth Amendment*, *Bolling v. Sharpe*, 347 U.S. 497, 500, 98 L. Ed. 884, 74 S. Ct. 693 (1954), is that the decision whether to prosecute may not be based on  "an unjustifiable standard such as race, religion, or other arbitrary classification," *Oyler v. Boles*, 368 U.S. 448, 456, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962).  A defendant may demonstrate that the administration of a criminal law is "directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law. *Yick Wo v. Hopkins*, 118 U.S. 356, 373, 30 L. Ed. 220, 6 S. Ct. 1064 (1886).

*Id.* at 464-465. To dispel the presumption that those who enforce federal law have done so appropriately, the person making the selective prosecution equal protection argument must present "clear evidence to the contrary." *Id.* Thus, for Mehmeti to prove a valid selective prosecution claim, he would be required to adduce "clear evidence" that the decision to bring a disciplinary charge against him "had both a discriminatory effect and a discriminatory intent." *United States v. Jones*, 159 F.3d 969, 976 (6th Cir. 1998). For example, when a selective prosecution claim is founded upon an allegation of racial bias, the claimant must show that "the prosecutorial policy was motivated by racial animus; to establish discriminatory effect, the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted." *Id.* at 977.

Here, Mehmeti asserts that his cell-mate was not questioned or prosecuted over the contraband weapon found in their cell. He has not contended that the decision to prosecute him but not his cell-mate was founded upon an "unjustifiable standard such as race, religion, or other arbitrary classification." *Armstrong*, 517 at 465. He also has not demonstrated that his cell-mate was similarly situated in regard to any classification other than being cell-mates. Moreover, the evidence of record before the DHO implies that the contraband was discovered when an inspecting officer "noticed a small handle protruding from the bottom of the left side locker;" and "in the locker was the id card of inmate Mehmetti # 79374-053."[36] It must be remembered that there is no inherent right not to be prosecuted if others who could be charged are not charged. The Sixth Circuit has ruled:

> There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately and forced somewhere; and prosecutors have broad discretion in deciding whom to prosecute. *Cf. Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

*Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th Cir. 1996). Unless a claimant can establish that he has been singled out because of membership in a protected group or the exercise of a constitutionally protected right, his selective prosecution claim has no merit. *Id.*

Given (i) the absence of any information to establish that Mehmeti was similarly situated (other than being a cell-mate) of another person he said should have been charged, and (ii) the absence of any evidence of discriminatory intent behind the decision to charge him but not his cell-mate, and (iii) the location of the contraband in the vicinity of Mehmeti's locker, the court should conclude that Mehmeti's Ground Four should be denied for lack of merit.

---

[36] ECF Doc. No. 13-1, Page ID# 74.

## V. Conclusion

In light of the foregoing analysis, I recommend that the court deny the entirety of Petitioner Faik Mehmeti's petition for writ of habeas corpus. This recommendation arises from the following conclusions: Ground One should fail, in part, because the disciplinary violation from which he seeks relief is supported by some evidence; and, in part, because he has procedurally defaulted his argument concerning his contended inability to call witnesses. Ground Two is not supported by any evidence of record and, in any event, has been procedurally defaulted. Ground Three should fail because the disciplinary violation from which Mehmeti seeks relief, founded upon the application of constructive possession principles is supported by some evidence. Ground Four should fail for lack of evidence of record to support a claim of unconstitutional selective prosecution.

Dated: May 19, 2016                                                  s/Thomas M. Parker
                                                                     United States Magistrate Judge

## VI. Notice to Parties Regarding Objections:

Local Rule 73.2 of this court provides:

> Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Secretary of*

*Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).